**United States District Court**
For the Northern District of California

1

2

3

4

5                          **NOT FOR PUBLICATION**

6              IN THE UNITED STATES DISTRICT COURT

7

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   JOHN STALCUP, et al.,                         No. C 11-00002 JSW

10              Plaintiffs,                        **ORDER GRANTING IN PART
                                                   AND DENYING IN PART**
11   v.                                            **MOTION TO REMAND AND
                                                   DENYING AS MOOT MOTION**
12   Y. KING LIU, et al.,                          **TO DISMISS**

13              Defendants.
                                              /
14

15                              **INTRODUCTION**

16         Now before the Court for consideration is the Motion to Remand filed by Plaintiffs John

17   Stalcup ("Stalcup"), Dennis McGowan ("McGowan"), and Michael Lyster ("Lyster")

18   (collectively "Plaintiffs").  Also before the Court for consideration is the Motion to Dismiss

19   filed by Defendants Y. King Liu ("Liu") and University of Northern California Foundation

20   ("UNCF") (collectively "Defendants").  Having considered the parties' papers, relevant legal

21   authority, the record in this case, and having had the benefit of oral argument, the Court

22   HEREBY GRANTS IN PART AND DENIES IN PART the Motion to Remand and DENIES

23   AS MOOT the Motion to Dismiss.

24                              **BACKGROUND**

25   **A.      Procedural History.**

26         On November 15, 2010, Plaintiffs filed the Complaint in this action in the Superior

27   Court of the State of California in and for the County of Sonoma ("Sonoma County Superior

28   Court").  In their Complaint, Plaintiffs assert claims for: (1) Beach of Contract; (2) Claim and

United States District Court

For the Northern District of California

1  Delivery; (3) Interference with Contractual Relations; and (4) Breach of Fiduciary Duty.

2  (Notice of Removal, Ex. A ("Compl.").)  Plaintiffs served Defendants on December 2, 2010.

3  (Declaration of Bruce Blakely in Support of Motion to Remand ("Blakely Remand Decl."), Exs.

4  B, C.)

5         On January 3, 2011, UNCF removed the action to this Court.  UNCF claims this Court

6  has original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), because Plaintiffs' "right to

7  relief necessarily depends upon a substantial question of federal patent law."  (Notice of

8  Removal     ¶ 3.)  UNCF asserts that "[a]ll served defendants in this action consent to this

9  removal."  (*Id.* ¶ 10.)

10  **B.     Factual Background.**

11         On or about December 3, 2005, Plaintiffs entered into a written agreement entitled

12  "Agreement of Co-Inventors of VBond Patent."  (Compl. ¶ 6; Declaration of Y. King Liu in

13  Opposition to Motion to Remand ("Liu Decl."), Ex. B (hereinafter "Co-Inventors Agreement").)

14  According to the preamble, the Co-Inventors' Agreement is "[a]n Agreement for sharing royalty

15  and license fees for certain Intellectual Property."  (Co-Inventors Agreement at 1.)  Stalcup,

16  McGowan, Lyster and Liu are referred to collectively throughout the Co-Inventors Agreement

17  as "Co-Inventors."  (*See generally id.* at 1-3.)  In pertinent part, the Co-Inventors Agreement

18  provides as follows:

19      WHEREAS the Co-Inventors have created a patent application for a bone
    cement and bone cement delivery device (hereinafter referred to as
20      "VBond Patent"),

21      NOW, THEREFORE, the Co-Inventors agree to share the royalty and
    license fee from the license of the VBond [*sic*] as follows;
22
    ...
23
    SECTION 2.1.  SHARE OF FEES.  The Co-Inventors will receive 33%
24      (thirty-three percent) of the license and royalty fees received by the
    University of Northern California Foundation (UNCF) as per their
25      agreement with UNC [*sic*] regarding the VBond Patent.  The Co-Inventors
    agree to share the royalty and license fees received from UNCF as
26      follows:

27          1/3 (one-third) of fees received to Dennis McGowan
        1/3 (one-third) of fees received to John Stalcup
28          1/3 (one-third) of fees received to Michael Lyster

**United States District Court**
For the Northern District of California

1   (Co-Inventors Agreement at 1.)

2       The Co-Inventors Agreement also contains a section that defines "Intellectual Property"

3   as "the VBond Patent, including all intangible personal property, whether deemed patents,

4   patent applications, copyrights, trademarks, service marks, trade names, masks [*sic*], trade

5   secrets and licenses, together with any goodwill, owned by Co-Inventors with respect to the

6   VBond Patent, all set forth in Schedule 1." (*Id.*)  Schedule 1, in turn, provides that the

7   Intellectual Property Assigned is the "VBond Patent and all updates, modifications, and

8   enhancements made to VBond Patent." (*Id.* at 3.)

9       On the same day, Stalcup, McGowan, Lyster, and Liu entered into a written agreement

10  with UNCF which is entitled "Assignment of Rights to VBond Patent to the University of

11  Northern California."  (Compl. ¶ 7; Liu Decl., Ex. A (hereinafter "Assignment Agreement").[1]

12  Stalcup, McGowan, Lyster and Liu are referred to collectively throughout the Assignment

13  Agreement as "Co-Inventors."  (*See generally* Assignment Agreement.")

14      The Assignment Agreement provides, in pertinent part:

15      WHEREAS the Co-Inventors have created a patent application for a bone
        cement and bone cement delivery device (hereinafter referred to as
16      "VBond Patent"), and

17      WHEREAS UNCF desires to acquire the VBond Patent,

18      NOW, THEREFORE, the Co-Inventors and UNCF, in consideration of the
        agreements and covenants set forth herein, agree as follows;
19
        ...
20
        **ARTICLE 2.  ASSIGNMENT AND LICENSE.**
21
        *SECTION 2.1.  STATEMENT OF ASSIGNMENT.* For valuable
22      consideration received, Co-Inventors assigns [*sic*] to UNCF, Co-
        Inventors' entire right, title, and interest in and to the Intellectual Property,
23      including goodwill, as set forth in Schedule 1.A.

24      *SECTION 2.2.  SCOPE OF ASSIGNMENT.*  By this Assignment, Co-
        Inventors delegate to UNCF all of Co-Inventors' duties and obligations
25      under the Intellectual Property subject as disclosed in Schedule 1.A [*sic*].
        No share, interest, license, or assignment, or other right to any or all of the
26      Intellectual Property has been transferred, assigned, or granted to any

27

28      [1]      *See note 1, supra.*  Liu is Chairman of the Board of Directors of UNCF.
    (Assignment Agreement at 5.)

**United States District Court**
For the Northern District of California

other party except as disclosed to UNCF in this Agreement in Schedule 1.A.

*SECTION 2.3.  GRANT OF EXCLUSIVE LICENSE.*  Co-Inventors hereby grant to UNCF and exclusive, world-wide right and license to make, use, market, sell and offer for sale the Intellectual Property as set forth in Schedule 1.A.

**ARTICLE 3.  PAYMENTS FOR ASSIGNMENT AND LICENSE.**

*SECTION 3.1.  PAYMENT.*  In consideration of the assignments and licenses granted to UNCF under Article 2 of this Agreement, UNCF agrees to pay Co-Inventors thirty-three percent (33%) of any royalty or license payments made to UNCF for the Intellectual Property assigned to UNCF by the Co-Inventors.  Such payments will not include product development fees, laboratory research or equipment fees, clinical investigation fees, patent application fees, or regulatory compliance fees.

(Assignment Agreement at 1-2.)

The Assignment Agreement defines the term "Intellectual Property" in the same manner as the Co-Inventors Agreement, *i.e.* the term means "the VBond Patent, including all intangible personal property, whether deemed patents, patent applications, copyrights, trademarks, service marks, trade names, masks [*sic*], trade secrets and licenses, together with any goodwill, owned by Co-Inventors with respect to the VBond Patent, all set forth in Schedule 1."  (*Id.* at 1.) Schedule 1.A of the Assignment Agreement, in turn, provides that the Intellectual Property Assigned is the "VBond Patent and all updates, modifications, and enhancements made to VBond Patent."  (*Id.* at 6.)

In brief, Plaintiffs and Liu assigned their rights in, *inter alia*, the "VBond Patent," to UNCF in exchange for thirty-three percent of any royalty or license payments made to UNCF for the "VBond Patent."  Plaintiffs and Liu agreed that Stalcup, McGowan and Lyster would evenly split the fees received from UNCF, *i.e.* the Plaintiffs each would receive one-ninth of all fees received from UNCF.

Plaintiffs allege that on or about November 17, 2006, UNCF entered into an Investment Representations Letter Agreement with Osseon Therapeutics, LLC ("Osseon LLC").  Pursuant to that letter agreement, "UNCF would receive a total of 400 Common Membership Interests (CMI's) of Osseon Therapeutics, LLC in exchange for UNCF providing Osseon Therapeutics, LLC with an exclusive license to the Osseon Bone Cement, formerly known as VBond Cement,

4

United States District Court

For the Northern District of California

1  and defendant Liu's agreement to work for [Osseon] for a period of one year commencing

2  March 1, 2007." (Compl. ¶ 12; *see also* Declaration of Constance F. Ramos in Support of

3  Defendant's Opposition to Plaintiffs' Motion for Remand ("Ramos Opp. Decl."), ¶ 2, Ex. 3

4  (Investment Representations Letter, ¶ 1, Ex A).)

5      Plaintiffs further allege that pursuant to the Assignment Agreement and the Co-

6  Inventors Agreement, they were entitled to receive thirty-three percent of the 400 CMI's, or 132

7  CMI's, that UNCF received pursuant to the Investment Representations Letter, but that

8  Defendants have not provided them with those CMI's. (Compl. ¶¶ 13-14.)

9      Plaintiffs further allege that on or about February 27, 2008, Osseon LLC entered into a

10  plan of conversion by which Osseon LLC would be converted to Osseon Therapeutics, Inc.

11  ("Osseon Inc."), a California corporation, and each outstanding CMI unit in the LLC would be

12  converted to 30,000 shares of common stock in Osseon Inc. (Compl. ¶ 15; *see also* Ramos

13  Opp. Decl., ¶ 2, Ex. 4 (Plan of Conversion, ¶¶ 1-5).)[2]  Plaintiffs further allege that pursuant to

14  the Assignment Agreement and Co-Inventors Agreement they were entitled to receive thirty-

15  three percent of the Osseon Inc. stock that UNCF would have received after UNCF's CMI's

16  were converted. According to Plaintiffs, Defendants have not provided them with that stock.

17  (Compl. ¶¶ 15-18.)

18                          **ANALYSIS**

19  **A.    Legal Standards Applicable to Removal Jurisdiction.**

20      "[A]ny civil action brought in a State court of which the district courts of the United

21  States have original jurisdiction, may be removed by the defendant ... to the district court of the

22  United States for the district and division embracing the place where such action is pending."

23  *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern*

24  *California*, 463 U.S. 1, 7-8 (1983) (citation omitted). *See also* 28 U.S.C. § 1441. However,

25  federal courts are courts of limited jurisdiction. Accordingly, the burden of establishing federal

26  jurisdiction for purposes of removal is on the party seeking removal, and the removal statute is

27

28      [2]    Stalcup and Liu are identified as all of the managers of Osseon LLC. (Plan of
Conversion at 2.)

1   strictly construed against removal jurisdiction. *Prize Frize Inc. v. Matrix Inc,* 167 F.3d 1261,

2   1265 (9th Cir. 1999); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004),

3   *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

4          Defendants assert removal is proper because this Court has federal question jurisdiction

5   over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1331 and 1338(a).  Under 28 U.S.C.

6   section 1331, "district courts shall have original jurisdiction of all civil actions arising under the

7   Constitution, laws, or treaties of the United States."  Under 28 U.S.C. § 1338(a), "district courts

8   shall have original jurisdiction of any civil action arising under any Act of Congress relating to

9   patents...."

10         "The presence or absence of federal-question jurisdiction is governed by the 'well-

11  pleaded complaint rule.'"  *Caterpillar Inc. v. Williams*, 482 U.S. 382, 392 (1987).  The well-

12  pleaded complaint rule recognizes that the plaintiff is the master of his or her claim.  "[H]e or

13  she may avoid federal jurisdiction by exclusive reliance on state law." *Id.*  Thus, under the

14  well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint

15  establishes either that federal law creates the cause of action or that the plaintiff's right to relief

16  necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*,

17  463 U.S. at 27-28.

18  **B.      Plaintiffs' Motion to Remand is Granted, in Part, and Denied in Part.**

19          **1.      Defendants' Removal Was Not Procedurally Defective.**

20         As a threshold matter, Plaintiffs argue that this Court should remand because defendant

21  Liu never consented to removal.  The Ninth Circuit has held that "the filing of a notice of

22  removal can be effective without individual consent documents on behalf of each defendant.

23  One defendant's timely removal notice containing an averment of the other defendants' consent

24  and signed by an attorney of record is sufficient." *Proctor v. Vishay Interechnology Inc.*, 584

25  F.3d 1208, 1225 (9th Cir. 2009).  Counsel for UNCF signed the Notice of Removal and, as set

26  forth above, UNCF asserted that "[a]ll served defendants in this action consent to this removal."

27  (*Id.* ¶ 10.)  Under *Proctor*, that is sufficient.  To the extent Plaintiffs seek remand on this basis,

28  their motion is DENIED.

*United States District Court*
For the Northern District of California

6

**2.      Plaintiffs' Complaint Does Not Raise a Substantial Question of Patent Law.**

Defendants argue that this Court has jurisdiction under Section 1338(a).  The Federal Circuit has explained that a district court's jurisdiction under that provision "'extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of patent law, in that patent law is a necessary element of the well-pleaded claims.'"  *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988)).

Defendants do not contend that patent law creates any of Plaintiffs' claims for relief.  Rather, they argue that the issue of inventorship, which is "indisputably a question of federal patent law," is a necessary element of each of Plaintiff's claims for relief.  *HIF Bio, Inc.*, 600 F.3d at 1355.  Although inventorship is a question of federal law, "a claim arises under the patent laws only if the inventorship issue is essential to the resolution of the claim." *Id.*, at 1354.  In addition, "the appearance of 'an alternative, non-patent theory,' which may entitle" a plaintiff to the relief requested would compel a finding that the claim for relief does not arise under the patent laws. *Id.*

In the *HIF Bio* case, two individuals - Park and Chun - filed a patent application covering a method for inhibiting tumor growth, based upon their experiments with a specific chemical, and subsequently assigned their rights concerning the chemical and the application to the plaintiffs.  600 F.3d at 1350.  In order to conduct their research, Park and Chun obtained the chemical from one of the defendants, Teng, and provided him with some of their research.  Teng then disclosed the results of the research to another defendant, Yung Shin Pharmaceuticals ("Yung Shin"), without the consent or knowledge of Park and Chun.  Teng also filed a provisional patent application in which he identified himself and Yung Shin's president as co-inventors of the anti-cancer properties of the chemical.  *Id.,* at 1351.

After they learned of Teng and Yung Shin's actions, the plaintiffs filed suit in state court and the defendants removed.  The plaintiffs then filed an amended complaint, which was premised primarily on state law claims, but also included a RICO claims and claims for

United States District Court

For the Northern District of California

1    declaratory judgment of ownership and inventorship. *Id.*, at 1351 n.1.  After the district court

2    dismissed the RICO claim, the district court declined to exercise supplemental jurisdiction over

3    the remaining claims and remanded the case.  In doing so, the district court held that the

4    declaratory judgment claims were "'valid state law claims.'" *Id.,* at 1351 (citing *HIF Bio, Inc.*

5    *v. Yung Shin Pharmaceuticals Industrial Co., Ltd.*, 2006 WL 6086295, at \*6 (C.D. Cal. June 9,

6    2006).  The Federal Circuit concluded that the district court erred and reversed.

7            The court first noted that "'the field of federal patent law preempts any state law that

8    purports to define rights based on inventorship.'" *Id.*, at 1353 (quoting *Univ. of Colo. Found. v.*

9    *Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999)).  It then noted that the plaintiffs'

10   amended complaint defined the invention at issue "solely in terms of the pending patent

11   applications." *Id.*  Thus, "the only possible theory on which relief could be granted ... would be

12   one in which determining the true inventor(s) of competing patent applications is essential." *Id.*

13   Because the issue of inventorship was essential to plaintiffs' claim for relief, the court held that

14   the cause of action arose under Section 1338(a).  *Id.*[3]

15           The Federal Circuit concluded that the only other state law claim for which patent law

16   was essential was the plaintiffs' claim for slander of title.  To prove that claim, the plaintiffs

17   would have to show, *inter alia*, disparagement of a title in which they held an interest.  The only

18   such interest alleged in the complaint was the invention, and the only disparaging statements

19   that defendants allegedly made were statements to the USPTO that defendants were the true

20   inventors.  Thus, the Federal Circuit concluded that "[t]he complaint ... sets forth only one

21   theory which entitles plaintiffs to relief: plaintiffs must demonstrate that they invented the

22   INVENTION first and that defendants' public statements are of inventorship are false and

23   caused the plaintiffs' damage." *Id.*, at 1355 (emphasis in original).  Because plaintiffs' solely

24

25

26   _____

       [3]       The court also concluded, however, that because the dispute involved pending
27   patent applications, the relief plaintiff sought would be "tantamount to a request for either a
     modification of inventorship on pending patent applications or an interference proceeding,"
28   and that relief could only be granted by the United States Patent and Trademark Office
     ("USPTO").  Thus, the court found that the plaintiffs failed to state a claim for relief. *Id.,* at
     1353-55.

1   theory of relief required a determination of inventorship, the claim for slander of title raised a

2   substantial question of patent law giving rise to federal jurisdiction. *Id.*

3         In contrast, the Federal Circuit concluded that patent law was not essential to any of

4   plaintiffs' remaining causes of action, because "each cause of action could be resolved without

5   reliance on the patent laws." *Id.*  As is pertinent to this case, the court concluded that plaintiffs'

6   claim for breach of contract did not "arise under [Section] 1338(a) because it could be resolved

7   by reference to the defendants' alleged failure to keep their promises not to misappropriate or

8   commercialize the" invention. *Id.*  The court also concluded that the ownership issue could be

9   resolved based on the plaintiffs' allegations of an implied contract, the terms of which could

10  dictate who owned the patent without regard to inventorship. *Id.,* at 1356-57.

11        In order to establish their claim for breach of contract, Plaintiffs must prove the

12  "following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance,

13  (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Security*

14  *Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990).  In order to establish their

15  claims for intentional interference with contractual relations, Plaintiffs also must establish, *inter*

16  *alia*, the existence of a valid contract. *See, e.g., Quelimane Co., Inc. v. Stewart Title Guaranty*

17  *Co.*, 19 Cal. 4th 26, 55 (1998).  Finally, to establish their claim for claim and delivery, Plaintiffs

18  must show a right to possession of the Osseon Inc. stock and the Defendants' wrongful

19  possession of the stock. *See, e.g., Adler v. Taylor*, 2005 WL 4658511, at *3 (C.D. Cal. Feb. 2,

20  2005.)

21        In this case, Plaintiffs rely on the Co-Inventors' Agreement and the Assignment

22  Agreement to establish the existence of the contracts at issue and the terms of those contracts to

23  establish their right to possession of the Osseon Inc. stock.  Defendants argue that in order to

24  show the contracts were valid, Plaintiffs must show that they were supported by consideration.

25  Although it is true that a contract must be supported by consideration, Defendants have not met

26  their burden to show why Plaintiffs would not be able to rely on the terms of the contracts to

27

28

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

1    show that they were supported by valid consideration.[4]   Indeed, Defendants' contention that the

2    contracts are not supported by valid consideration - because Plaintiffs are not in fact the

3    inventors - is a defense to those claims and to Plaintiffs' requested remedy for specific

4    performance.  A court, however, cannot exercise removal jurisdiction on the ground that the

5    complaint gives rise to a potential or an anticipated defense that might raise a federal question.

6    *Franchise Tax Board*, 463 U.S. at 10.

7            The Court also finds unpersuasive Defendants' argument that the question of

8    inventorship is essential to Plaintiffs' claim for breach of fiduciary duty.  In their Complaint,

9    Plaintiffs allege that Liu owes them a fiduciary duty "[b]y virtue of his being a co-inventor of

10   the VBond Patent with plaintiffs; by virtue of his contractual relations with plaintiffs and the

11   duties required therein; and by virtue of his acting as plaintiffs' agent[.]"  (Compl., ¶ 10.)

12   Because Plaintiffs' cause of action for breach of fiduciary duty could rest on the alternative non-

13   patent theory of agency, the breach of fiduciary duty claim does not necessarily raise a

14   substantial question of patent law and does not vest this Court with jurisdiction.[5]   *HIF Bio*, 600

15   F.3d at 1354.

16       **3.       Plaintiffs' Request for Attorneys' Fees is Denied.**

17           Plaintiffs also request an award of attorneys' fees and costs incurred as a result of

18   Defendant's allegedly improper removal.  "An order remanding the case may require payment

19   of just costs and any actual expenses, including attorney fees, incurred as a result of the

20   removal."  28 U.S.C. § 1447(c).  To determine whether to award costs and fees under Section

21   1447(c), the Court has a "great deal of discretion."  *Morris v. Bridgestone/Firestone, Inc.*, 985

22   F.2d 238, 240 (9th Cir. 1993).  Although Defendants have not met their burden to demonstrate

23   that removal was proper, the Court does not find that removal was frivolous or motivated by

24

25           [4]       In its Notice of Tentative Ruling and Questions for Hearing, the Court noted
     the contracts "appeared" to contain unambiguous language.  Based on Plaintiffs' arguments
26   at the hearing, the Court hereby advises the parties that it made no findings to that effect, and
     the Court's Notice of Tentative Ruling should not be construed in that fashion.  (*See* Docket
27   No. 40 (Transcript of Hearing at 7:11-14).)

28           [5]       The Court expresses no opinion on whether Plaintiffs' allegations of agency
     are sufficient to state a claim for breach of fiduciary duty on that basis.

1    bad faith. The Court therefore declines to exercise its discretion to award Plaintiff fees and

2    costs under Section 1447(c).

3                                    **CONCLUSION**

4            For the foregoing reasons, Plaintiffs' motion for remand is GRANTED IN PART AND

5    DENIED IN PART and Defendants' motion to dismiss is DENIED AS MOOT, without

6    prejudice to Defendants renewing those arguments in state court. The Clerk shall remand this

7    case to Sonoma County Superior Court forthwith.

8            **IT IS SO ORDERED.**

9

10   Dated: April 22, 2011

                                            _____
11                                          JEFFREY S. WHITE
                                            UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

11